RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0305p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CLARENCE BRYANT (08-6375);
JOHN C. TURNER (08-6378),

                *Plaintiffs-Appellants,*

      *v.*

COMMISSIONER OF SOCIAL SECURITY,

                *Defendant-Appellee.*

Nos. 08-6375/6378

_____

Appeal from the United States District Court
for the Eastern Districts of Kentucky at Lexington and London.
Nos. 07-00209, 06-00450—G. Wix Unthank, District Judge.

Argued: July 28, 2009

Decided and Filed: August 24, 2009

Before: COLE and COOK, Circuit Judges; COHN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Wolodymyr Iwan Cybriwsky, LAW OFFICE, Prestonsburg, Kentucky, for Appellants. Jeffrica Jenkins Lee, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Wolodymyr Iwan Cybriwsky, LAW OFFICE, Prestonsburg, Kentucky, for Appellants. Jeffrica Jenkins Lee, William Kanter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

COLE, Circuit Judge. Plaintiffs-Appellants Clarence Bryant and John C. Turner (collectively, "Plaintiffs") appeal from separate cases awarding attorney fees directly to Plaintiffs rather than to their attorneys under the Equal Access to Justice Act (the

_____

[*] The Honorable Avern L. Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

"EAJA"), 28 U.S.C. § 2412(d). This Court consolidated Plaintiffs' appeals. Plaintiffs, who are both represented by the same counsel, argue that the district court's decision to award fees to Plaintiffs is contrary to the past practices of the Social Security Administration, at odds with a recent decision of this Court, and deleterious to the ability of Social Security claimants to obtain legal representation. Specifically, Plaintiffs argue that awarding attorney-fee payments directly to plaintiffs subjects those payments to administrative offset under the Debt Collection Improvement Act of 1996 (the "DCIA"), 31 U.S.C. § 3716, reducing or completely eliminating Plaintiffs' ability to pay for legal services. Plaintiffs also argue that the district court erred in refusing to increase the EAJA compensable hourly rate from $125 to $150.

We share Plaintiffs' concern that awarding attorney fees to successful parties, rather than to their attorneys, will prevent some successful plaintiffs from paying their lawyers and, ultimately, may prevent future claimants from obtaining counsel in the first place. However, the plain language of the EAJA, as well as Supreme Court case law interpreting similar language in other statutes, convinces us that we must **AFFIRM** the district court's decisions.

## I. BACKGROUND

Plaintiffs filed separate applications for Social Security Disability Insurance Benefits. Their applications were both denied by the Commissioner of Social Security ("Commissioner"). After exhausting their administrative remedies, Plaintiffs filed appeals in the United States District Court for the Eastern District of Kentucky. In both cases, the Plaintiffs prevailed in that the district court found the Commissioner's decisions unsupported by substantial evidence and remanded the cases to the Commissioner.

Plaintiffs then moved for attorney fees under the EAJA at an hourly rate of $150 and requested payment directly to counsel. The Commissioner objected to the requested fee rate and argued that any fee award should be paid to Plaintiffs, rather than to their attorney. The district court awarded attorney fees but held that only the $125 per hour

fee-rate set by Congress was warranted. The court also held that EAJA attorney fees are payable to the party, and not the party's attorney. These appeals followed.

## II. ANALYSIS

### A.     Standard of review

Plaintiffs raise two issues on appeal. The first issue, whether attorney fees are payable to Plaintiffs or Plaintiffs' attorney, is an issue of statutory interpretation, which the Court reviews de novo. *United States v. Gagnon*, 553 F.3d 1021, 1025 (6th Cir. 2009). The second issue, whether the Plaintiffs were entitled to an increase in the hourly attorney-fee rate, is reviewed for abuse of discretion. *See Blum v. Stenson*, 465 U.S. 886, 898 (1984); *Townsend v. Comm'r of Soc. Sec.*, 415 F.3d 578 (6th Cir. 2005). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001) (quotation marks and citation omitted).

### B.     The Plaintiffs, and not their attorney, are the proper recipient of attorney fees under the EAJA

#### 1.     The history

The EAJA, enacted in 1980, provides for an award of attorney fees to a party prevailing against the United States in a civil action when the position taken by the Government is not substantially justified and no special circumstances exist warranting a denial of fees. 28 U.S.C. § 2412(d)(1)(A); *see also Perket v. Sec. of H.H.S.*, 905 F.2d 129, 132 (6th Cir. 1990). The purpose of the statute is described in its legislative history:

> The [EAJA] rests on the premise that certain individuals . . . may be deterred from seeking review of . . . unreasonable governmental action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government. The purpose of the bill is to reduce the deterrents and disparity by entitling certain prevailing

> parties to recover an award of attorney fees, expert witness fees and other expenses against the United States, unless the Government action was substantially justified.

H.R. Rep. No. 96-1418, at 5-6 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4984. This statement indicates that Congress intended to make challenges to unreasonable government action more accessible for certain individuals by allowing them to recoup reasonable attorney fees and costs, should they prevail.

Since 1980, the Commissioner has paid attorney fees under the EAJA directly to attorneys, and not to Social Security claimants. As noted by the Fourth Circuit, "[i]n fact, the Commissioner created a direct deposit system for attorneys and issued I.R.S. 1099 forms directly to the attorneys who received awards as taxable attorney income." *Stephens v. Astrue*, 565 F.3d 131, 135 (4th Cir. 2009). Recently, however, the Commissioner changed this practice, partly in response to the DCIA, taking the position that attorney-fee awards under the EAJA were the property of claimants and not their attorneys. The result of this change is that fee awards are now subject to administrative offset if the claimant owes a debt to the federal Government.

2.      *The EAJA*

Plaintiffs argue that attorney fees under the EAJA are the property of and are payable directly to their attorney. A review of the relevant case law on attorney fees under the EAJA involving Social Security benefits reveals a split among our sister circuits. *Compare Stephens*, 565 F.3d at 139 (4th Cir. 2009) (concluding that EAJA fees are payable to the party, not the attorney); *Reeves v. Astrue*, 526 F.3d 732, 738 (11th Cir. 2008) (same) *cert. denied*, 129 S. Ct. 724 (2008); *Manning v. Astrue*, 510 F.3d 1246, 1252-55 (10th Cir. 2007) (same), *cert. denied*, 129 S. Ct. 486 (2008); *with Ratliff v. Astrue*, 540 F.3d 800, 802 (8th Cir. 2008) (concluding the EAJA fee award was payable to the attorney, not to the party). In an unpublished opinion, this Circuit took the position in dicta that "attorney's fees awarded under the EAJA are payable to the attorney; they are awarded for the benefit of the party, but the money is not the party's to keep." *King v. Comm'r of Soc. Sec.*, 230 F. App'x 476, 481 (6th Cir. 2007).

Plaintiffs' argument relies heavily on *King*, but "as an unpublished decision, [*King*] is not precedentially binding under the doctrine of stare decisis," and is considered by us only for its persuasive value. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007). The above-quoted language was not a central issue of the case. *See King*, 230 F. App'x at 481. *King* involved a challenge to a district court order denying attorney fees under the EAJA because the motion was filed on behalf of King's attorney, rather than on behalf of King himself. *Id*. Although it was improper to bring the motion in the attorney's name, we reversed because the motion on the whole "was not made by counsel as the real party in interest, but was *on behalf of the Plaintiff*." *Id*. at 482 (internal quotations omitted) (emphasis in original). The *King* Court was not tasked with considering the proper recipient of the EAJA attorney fees so it did not examine the EAJA's text or look to case law bearing on that question from the Supreme Court or other circuits. As such, *King*'s analysis did not address the question at hand.

Thus, we consider for the first time whether attorney fees awarded under the EAJA are payable to the party or the party's attorney.

> When we . . . are called upon to review and interpret Congress's legislation, "[i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms."

*Thompson v. N. Am. Stainless, LP*, 567 F.3d 804, 807 (2009) (en banc) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). "The meaning of a statute is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Nat'l Cotton Council of Am. v. United States EPA*, 553 F.3d 927, 935 (6th Cir. 2009). "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Caminetti*, 242 U.S. at 490. Accordingly, when the statutory language is plain, the "function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004); *see also*

*Thompson*, 567 F.3d at 807. "[W]e give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000).

> Thus, our inquiry begins with the language of the EAJA, which provides:
>
> a court shall award *to a prevailing party* other than the United States fees and other expenses . . . *incurred by that party* in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). The Supreme Court recently explained when considering another provision of the EAJA—governing fees and expenses in the administrative context—that the above "prevailing party" language should "leave[] no doubt" that Congress intended that EAJA awards be considered from "the perspective of the litigant" and not from that of her attorney. *Richlin Sec. Serv. Co. v. Chertoff*, 128 S. Ct. 2007, 2013 (2008). Three circuits—the Fourth, Tenth, and Eleventh Circuits—find that "'this statutory language . . . provides that the prevailing party, who incurred the attorney[] fees, and not that party's attorney, is eligible for an award of attorney[] fees.'" *Stephens*, 565 F.3d at 137-38 (quoting *Manning*, 510 F.3d at 1249-50). Though the Eighth Circuit reached the opposite conclusion, it felt it was constrained by prior precedent, stating that had it considered the issue in the first instance the Circuit "may well [have] agree[d] with our sister circuits and be persuaded by a literal interpretation of the EAJA, providing that 'a court may award reasonable fees and expenses of attorneys . . . *to the prevailing party*.'" *Ratliff*, 540 F.3d at 802 (citation omitted) (emphasis in original). In fact, Judge Gruender wrote a separate concurring opinion to emphasize that "[the Eighth Circuit's] holding today, as compelled by [precedent], is inconsistent with the language in two Supreme Court opinions, the EAJA's plain language and the holdings of most other circuit courts." *Id.* at 803 (Gruender, Circuit J., concurring). Like the Fourth, Tenth, and Eleventh Circuits, we are

persuaded by the plain language of the EAJA and conclude that the prevailing party, and not her attorney, is the proper recipient of attorney fees under the EAJA.

Other sections of the EAJA support our conclusion. In it, Congress defines "party" as an individual whose net worth does not exceed $2,000,000 or an owner of a corporation or other organization with fewer than 500 employees and a net worth of $7,000,000 or less. *See* 28 U.S.C. § 2412(d)(2)(B). Thus, Congress's concept of "party" plainly does not include the claimant's attorney. Moreover, the EAJA specifically states that a fee application must demonstrate that "the party"—not the party's attorney—is both a "prevailing party" and is financially "eligible to receive an [EAJA] award." *Id.* § 2412(d)(1)(B). It would make no sense to condition the receipt of attorney-fee awards on the size of law practice, firm, or non-profit legal corporation that represents claimants. Simply put, Plaintiffs' argument that the EAJA fees are payable to the party's attorney, rather than to the party, cannot be read harmoniously with these provisions. Rather, the EAJA allows "attorney[] fees reimbursement to financially eligible parties, who make a proper application, and not to their attorneys." *Manning*, 510 F.3d at 1251.

Moreover, the EAJA distinguishes between the "prevailing party" who is eligible to receive fees and the attorney who is one of the party's many litigation expenses. Specifically, the EAJA requires that in order to apply for fees and other expenses, "the party" must submit an itemized statement "*from* any attorney or expert witness" stating her "actual time expended and the rate at which fees and other expenses were computed." *Id.* § 2412(d)(1)(B) (emphasis added). This use of the directional "from" language indicates that the fee applicant would be receiving the fee calculations from the attorney or expert witness rather than the attorney or expert witness as a fee applicant submitting her own figures. Thus, in defining "fees and other expenses," which "includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees," Congress categorizes attorneys along with other persons necessary for the preparation and execution of a case. *Id.* § 2412(d)(2)(A). Nothing in the EAJA suggests that all persons

performing services for the "prevailing party" may separately assert claims for compensation from the Government. Rather, Congress appears to have intended that these persons—including the party's attorney—receive their compensation from the party who utilizes their services. *See Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1511 (11th Cir. 1988).

If Congress had intended for EAJA fees to be awarded to the party's attorney, it could have explicitly done so. In other statutes, Congress has explicitly provided for the award of attorney fees to the attorney rather than the party. For instance, in § 406(b) of the Social Security Act, Congress provided for the direct payment of attorney fees to the attorney, stating that the "court may determine and allow . . . a reasonable fee for . . . representation" and the Commissioner may "certify the amount of such fee for payment *to such attorney* . . . ." 42 U.S.C. § 406(b)(1)(A) (emphasis added). The foregoing language demonstrates that Congress clearly understands how to award attorney fees directly to the attorney. Because Congress did not use such language in the EAJA, we conclude that it did not intend attorney fees under the EAJA to be payable directly to the party's attorney.

Our conclusion is further supported by the Supreme Court's attorney fee decisions concerning claims brought under 42 U.S.C. § 1988. The Court explained, albeit in dicta, that, in "allow[ing] the prevailing party . . . a reasonable attorney[] fee as part of costs," 42 U.S.C. § 1988(b), § 1988 makes clear that "the party, rather than the lawyer," is eligible for fee awards. *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990); *see also Evans v. Jeff D.*, 475 U.S. 717, 730-32 (1986) (concluding that plaintiffs in a § 1988 class action settlement could waive attorney fees). The Supreme Court "rejected the argument that the entitlement to a § 1988 award belongs to the attorney rather than the plaintiff." *Venegas*, 495 U.S. at 89 (citing *Jeff D.*, 475 U.S. at 731-32). The EAJA uses the same "prevailing party" language as §1988, and adopting Plaintiffs' position that the EAJA fee awards are payable directly to attorneys would be inconsistent with the Supreme Court's precedent.

*3.       The DCIA*

Plaintiffs contend that awarding fees directly to the party and subjecting those payments to the DCIA will dissuade counsel from taking these and similar cases in the future. It is true that because the EAJA awards are payable to plaintiffs rather than to plaintiffs' counsel, those awards are subject to administrative offset. Awarding these fees to plaintiffs arguably makes it less certain that attorneys taking these cases will be paid. These are legitimate concerns worthy of Congressional consideration. In the meantime, as the Tenth Circuit explained, "[a]ll federal payments, including 'fees,' are subject to administrative offset," except for payments that are explicitly excepted from the DCIA. *Manning*, 510 F.3d at 1255 (citing 31 C.F.R. § 285.5(e)(1), (2)). Nothing in the EAJA or the applicable statutory and regulatory provisions governing the administrative-offset process currently exempts the attorney-fee awards at issue here from offset. As the Supreme Court stated in discussing § 1988 fee awards,

> while it is undoubtedly true that Congress expected fee shifting to attract competent counsel to represent citizens deprived of their civil rights, it [did not] bestow[] fee awards upon attorneys nor render[] them nonwaivable or nonnegotiable . . . .

*Jeff D.*, 475 U.S. at 731. The same applies in the EAJA award context. EAJA fee awards are intended to attract competent counsel to represent citizens contesting governmental action and to level the litigatory playing field. Our decision, unfortunately, may have the contrary effect. If Congress intended to exempt EAJA fee awards from administrative offset, it can amend either the EAJA or the DCIA, but the current statutory language leads us to conclude that attorney fees under the EAJA are subject to administrative offset.

**C.       The district court did not abuse its discretion in limiting fees to the EAJA's statutory cap**

Under the EAJA, the amount of attorney fees awarded

> shall be based upon the prevailing market rates for the kind and quality of services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase

in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). In requesting an increase in the hourly-fee rate, Plaintiffs bear the burden of producing appropriate evidence to support the requested increase. *See Blum v. Stenson*, 465 U.S. 886, 898 (1984) (considering attorney fees under § 1988, the Court stated,"[t]he burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant"). Plaintiffs must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 895 n.11.

Plaintiffs contest the district court's refusal to award fees above the EAJA's $125 statutory cap. Plaintiffs argue that evidence submitted by their counsel in previous EAJA petitions and statistical data submitted to the district court justifies the requested $25 per hour increase in fees. Plaintiffs also make policy arguments that the low hourly rate provided by the EAJA as well as increases in filing fees have led to a decrease in the number of qualified attorneys pursuing Social Security claims.

The Commissioner responds that based on the evidence submitted in each case, the district court did not abuse its discretion in denying an increase in the EAJA hourly-fee rate. The Commissioner argues that the district court properly noted that Plaintiffs failed to produce evidence supporting a fee increase, and thus denied Plaintiffs' requests.

Here, Plaintiffs failed to meet their burden of proof, and the district court, in each case, appropriately noted the lack of proffered evidence. In fact, in both cases, Plaintiffs submitted only the Department of Labor's Consumer Price Index, arguing that the rate of inflation supported an increase in fees. This is not enough, and the district court did not abuse its discretion in denying Plaintiffs' requests. Moreover, Plaintiffs' policy arguments arguably justifying a legislative increase to the EAJA's statutory cap are not relevant to this Court's review for abuse of discretion. For these reasons, we affirm the decisions of the district court limiting the hourly-fee rate in these cases to $125.

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the decisions of the district court.