NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0180n.06

No. 18-3606

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GILBERTO PABLO LORENZO,        )
                               )
        Petitioner-Appellant,  )
                               )
v.                             )
                               )
WILLIAM P. BARR, Attorney General  )
                               )
        Respondent-Appellee.   )
                               )

**FILED**
Mar 30, 2020
DEBORAH S. HUNT, Clerk

ORDER REGARDING EAJA
FEE REQUEST

Before:  **CLAY, GILMAN, and KETHLEDGE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.**  Gilberto Pablo Lorenzo (Pablo Lorenzo) has filed an Application for Attorney Fees and Costs under the Equal Access to Justice Act (the EAJA). Pablo Lorenzo's attorney seeks $20,263.80 in attorney fees and $500 in filing fees associated with Pablo Lorenzo's successful petition for review of a decision by the Board of Immigration Appeals (the BIA).  The BIA denied Pablo Lorenzo's motion to reopen his application for asylum.  We overturned that decision on July 9, 2019, holding that the BIA failed to properly evaluate Pablo Lorenzo's evidence and that it applied the wrong legal standards to one of his claims.  *Pablo Lorenzo v. Barr*, 779 F. App'x 366, 368 (6th Cir. 2019).  For the reasons set forth below, we GRANT Pablo Lorenzo's motion in part and award a total of $11,035.75 in attorney fees and costs.

## I.  DISCUSSION

The EAJA provides in relevant part as follows:

[A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases

sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). In order to recover attorney fees under the EAJA, then, the applicant must demonstrate that (1) he is a prevailing party, (2) the government's position was not substantially justified, (3) no special circumstances make an award unjust, and (4) he has filed a timely motion. *Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 129–30 (6th Cir. 2007) (citing *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)).

The government concedes that Pablo Lorenzo is a prevailing party with respect to his changed-country-conditions claim (but not his ineffective-assistance-of-counsel claim) and that he filed a timely EAJA motion. It contends, however, that an award of attorney fees is inappropriate because the government's position was substantially justified. In the alternative, it argues that, if this court awards attorney fees, those fees should be reduced.

A. **"Substantially justified"**

The government bears the burden of showing that its position was substantially justified. *United States v. True*, 250 F.3d 410, 419 n.7 (6th Cir. 2001) (collecting cases). "Substantially justified" means "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "The government's 'position' comprehends both the United States' underlying action and its litigation position." *Delta Eng'g v. United States*, 41 F.3d 259, 261 (6th Cir. 1994) (quoting 28 U.S.C. § 2412(d)(1)(A)). Here, the government argues that its position was substantially justified because the BIA's decision was reasonable, and it essentially repeats the arguments previously rejected by the majority of this panel.

To the contrary, we concluded in our original decision that the BIA abused its discretion by failing to "properly evaluate Pablo's evidence of changed country conditions" and by

"appl[ying] the wrong legal standards when evaluating Pablo's claim." *Pablo Lorenzo*, 779 F. App'x at 373–74. "The BIA was required to either 'explicitly find' that [Pablo's] reasonably specific facts were 'inherently unbelievable' or 'accept' Pablo's facts 'as true,'" but it "did neither." *Id.* at 374 (quoting *Trujillo Diaz v. Sessions*, 880 F.3d 244, 253 (6th Cir. 2018)). And "although Pablo submitted hundreds of pages of evidence in support of his motion to reopen based on changed country conditions, the BIA dismissed Pablo's evidence in a cursory three-paragraph decision that failed to meaningfully discuss the voluminous evidence that Pablo had presented." *Id.* These failures were unreasonable and without substantial justification. *See Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004) (holding that, "where the [ALJ] was found to have selectively considered the evidence in denying benefits," and the Commissioner "defend[ed] the [ALJ's] denial of benefits," the government's position was "without substantial justification").

The BIA also ignored this court's holding in *Yu Yun Zhang v. Holder*, 702 F.3d 878, 880 (6th Cir. 2012), that voluntarily joining a persecuted group does not preclude a demonstration of changed country conditions. So too did it ignore this circuit's rule that changed country conditions can exist "when persecution of an already-targeted group escalates." *Pablo Lorenzo*, 779 F. App'x at 375 (citing *Yu Yun Zhang*, 702 F.3d at 880). These failures on the part of the BIA were neither reasonable nor substantially justified. *See Thangaraja v. Gonzales*, 428 F.3d 870, 875 (9th Cir. 2005) (holding that the government's position was not substantially justified where the "IJ's decision, defended by the Attorney General, ran squarely counter to our precedent"). EAJA fees are therefore warranted.

B.      **"Prevailing party"**

The government argues in the alternative that, if Pablo Lorenzo is awarded attorney fees, those fees should be reduced on the basis that Pablo Lorenzo prevailed only on his changed-

country-conditions claim, and not on his ineffective-assistance-of-counsel claim. True enough, "where claims are unrelated to each other . . . [,] the fee award should be reduced to reflect work done only on the claim on which the plaintiff prevailed." *Sakhawati v. Lynch*, 839 F.3d 476, 480 (6th Cir. 2016). But such a circumstance is "unlikely to arise with great frequency," *id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)), and the Supreme Court has made clear that the "court should focus on the significance of the overall relief obtained by the plaintiff," *Hensley*, 461 U.S. at 435. As the Supreme Court in *Hensley* explained,

> [w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 435.

Pablo Lorenzo's two claims were alternative legal grounds for the same desired outcome: a reversal of the BIA's denial of his motion to reopen his removal proceedings. His success in achieving the desired outcome is therefore sufficient to render him a "prevailing party" for the entirety of the fee request. *See Sakhawati*, 839 F.3d at 480 (declining "the government's invitation to apportion Sakhawati's attorney fees to the single claim addressed in [the] previous opinion" because Sakhawati had obtained the relief she requested, i.e., "vacatur of the BIA's decision").

**C.     Fee cap**

The government further contends that, if Pablo Lorenzo is awarded attorney fees, those fees should be capped at $5,000, which is the amount that Pablo Lorenzo's attorney charged him for the initial appeal. This argument is misplaced for at least three reasons.

*First*, the purpose of the EAJA is to afford adequate legal representation to clients who otherwise could not afford it. *See, e.g.*, *Jean*, 496 U.S. 154, 165 n.14 (1990) (quoting H.R. Rep.

No. 96-1418, at 10 (1980) and S. Rep. No. 96-253, at 7 (1979)); *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989). The $5,000 that Pablo Lorenzo agreed to pay his attorney most likely represents the most that he could afford to pay. In fact, the record shows that, to date, Pablo Lorenzo has paid his attorney only $4,450. That sum is not necessarily an indication of prevailing market rates.

*Second*, the $5,000 retainer related only to the initial representation, which ultimately totaled 34.05 hours. Pablo Lorenzo's attorney then spent an additional 13.25 hours filing a response to the government's motion to amend the opinion. That work was done on a pro bono basis. Pablo Lorenzo's attorney also spent 22.7 hours on the EAJA motion. As far as the records show, Pablo Lorenzo has paid nothing for these additional hours. His attorney is therefore entitled to compensation for this unpaid work.

*Third*, the case that the government cites in support, *Barwari v. Mukasey*, 282 F. App'x 896 (2d Cir. 2008) (summary order), is an unpublished opinion in the Second Circuit. It therefore lacks precedential value. Moreover, the cited language in *Barwari* addresses not how much money an attorney should receive under the EAJA, but rather who the beneficiary of that EAJA award should be.

The *Barwari* court expressed concern that "[t]he motion [for attorney fees] include[d] a document purporting to memorialize Barwari's assignment to her counsel of any EAJA award granted" because "it [wa]s unclear to [the court] why Barwari would assign the entire EAJA award to her counsel if she ha[d] already paid him according to the terms of the retainer agreement." *Id.* at 899–900. The court then explained (and this is the language quoted by the government) that "[t]he purpose of the EAJA award, after all, is not to further enrich counsel beyond what he has received from his client, but instead to reimburse the client for her expenses and compensate counsel for any additional labor or costs that have not yet been paid for." *Id.* at 900. In other

words, the client should be reimbursed for what he or she has already paid, and the attorney should be compensated for any additional, unpaid labor or costs.

The only other authority that the government cites for its proposition that EAJA attorney fees should be limited to the amount that a client has paid his or her attorney is *Blum v. Stenson*, 465 U.S. 886, 897 (1984), but that case states only that the attorney fee should be "reasonable" and "not produce windfalls to attorneys," *id.* (quoting S. Rep. No. 94-1011, at 6 (1976)). It does not opine on whether attorney fees must be capped at the amount that a client has actually paid.

In order to avoid a "windfall" to Pablo Lorenzo's attorney and to comport with the purpose of the EAJA, the $4,450 that Pablo Lorenzo has already paid should be refunded to him. *See Barwari*, 282 F. App'x at 900 ("We therefore hold that . . . upon receiving this award Barwari's counsel must refund Barwari any and all fees that she has already paid to him in connection with this matter."). Pablo Lorenzo's attorney, however, remains entitled to fees for her time and costs for which Pablo Lorenzo has not already paid. This includes work that was performed at a lower-than-market rate.

**D.    Applicable hourly rate and reasonable proportionality**

The government makes two additional arguments: (1) that attorney fees are generally capped at $125 per hour, and (2) that the time spent working on the EAJA motion (22.7 hours) is disproportionate to the hours spent on the merits of Pablo Lorenzo's case. With respect to (1), we note that the $125 cap was imposed when the EAJA was amended in 1996. *See* Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 232(b)(1), 110 Stat. 847, 863 (amending the EAJA to increase the statutory cap from $75 to $125). That $125 hourly cap has not yet been amended to adjust for inflation, but the statute specifically states that the cap can be adjusted upward if "the court determines that an increase in the cost of living or a special factor .

. . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Our caselaw has reiterated this standard. *See, e.g.*, *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 449–50 (6th Cir. 2009).

Pablo Lorenzo's attorney, who lives and works in California, has included in the EAJA motion the Ninth Circuit's list of statutory maximum hourly rates under the EAJA, adjusted for increases in the cost of living. The Ninth Circuit's listed statutory maximum is $201.60 in 2018 and $204.25 in the first half of 2019, and these are the rates that Pablo Lorenzo's attorney lists for the majority of her entries. She also includes as supporting evidence the Consumer Price Index (CPI), affidavits from other Bay Area immigration attorneys testifying to their hourly rates (which range from $225 to $650 for all attorneys, and $450 to $650 for partners), and information about her specialized training and credentials. The government challenges the inclusion of the CPI, but our caselaw makes clear that, although "the CPI alone is insufficient to justify an attorney's fee higher than the $125 statutory cap," the CPI can be considered in conjunction with evidence of prevailing rates in the community. *Coursey v. Comm'r of Soc. Sec.*, 843 F.3d 1095, 1098 (6th Cir. 2016). Pablo Lorenzo's attorney has included that evidence in the form of affidavits from other attorneys.

Viewing all of the provided information as a whole, we are of the opinion that the Ninth Circuit's listed statutory maximums are a reasonable basis upon which to award attorney fees. But the request of Pablo Lorenzo's attorney for $400 per hour for the legal research and writing that she did in preparing the opening brief strikes us as unreasonable. That amount is approximately twice the Ninth Circuit's cap and over three times the federal statutory cap. Pablo Lorenzo's attorney argues that her specialized immigration experience justifies a fee enhancement, but we have found no Sixth Circuit authority that supports that proposition, and the relevant caselaw in other circuits suggests otherwise. *See, e.g.*, *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir.

2005) (declining "to adopt counsel's proposed per se rule that 'the practice of immigration law should be classified as a specialty similar to practicing patent law'").

Although courts have awarded enhanced fees in a limited number of immigration cases, those cases were far more "unusual and complex" than the present case. *See, e.g.*, *Nadarajah v. Holder*, 569 F.3d 906, 914 (9th Cir. 2009) (order) ("This was an unusual and complex case which required a 58-page brief and resulted in a significant 15-page published decision that is cited thus far in more than 70 other cases and 20 treatises or articles."). We therefore conclude that the work in preparing the opening brief should be capped at the Ninth Circuit's statutory maximum of $201.60 per hour for work performed in 2018 and $204.25 per hour for work performed in 2019.

Finally, the government argues that the 22.7 hours spent on the EAJA motion is disproportionate to the time spent on the opening and reply briefs. It cites the out-of-circuit case of *United States v. Eleven Vehicles*, 200 F.3d 203 (3d Cir. 2000), to support its conclusion regarding the need for proportionality in awarding fees. But *Eleven Vehicles* relied, at least in part, on the Sixth Circuit case of *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986), which was later overturned, *see Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 692 (6th Cir. 2016) ("[T]he *Coulter* 3% cap on fees . . . is inconsistent with intervening Supreme Court authority."). The *Husted* court also noted that "preparing and supporting a fee application is more strenuous than invoicing an hourly client in the marketplace because much more detail and proof is required." *Id.* at 724.

That said, the specific holding in *Husted* was that capping the EAJA fee at 3% of the fee for the merits litigation is unreasonable. *Id.* at 725. On the other hand, we agree that 22.7 hours of work on the fees motion, which represents approximately one third of the total time spent on this case, is disproportionate and thus unreasonable. The caselaw provides us with no hard-and-

8

fast rules regarding a reasonable proportion between the fees for the merits litigation and the fees for the EAJA request. But at least one recent case awarded fees for the EAJA request that totaled approximately 10% of the fees for the merits litigation. *See Sakhawati v. Lynch*, 839 F.3d 476, 481 (6th Cir. 2016). We conclude that 10% is a reasonable proportion to apply in the present case.

### E.      Calculation of a reasonable fee

We now turn to the calculation of a reasonable fee. Of the $20,263.80 requested, the following two factors should reduce the award: (1) the portion of the work billed at $400 per hour, and (2) the hours spent on the EAJA request that are disproportionate to the hours spent on the merits of the case. With respect to (1), all of the work billed during 2018 should be billed at $201.60 per hour, and all of the work billed during 2019 should be billed at $204.25 per hour. This results in a total award of $9,577.95 for the merits litigation. With respect to (2), a proportional fee award of 10% of the merits award results in an additional award of $957.80 for the EAJA request. The government should also reimburse Pablo Lorenzo for the $500 filing fee. The EAJA award thus totals $11,035.75, which is to be paid directly to Pablo Lorenzo's attorney.

Upon receiving the EAJA award from the government, however, Pablo Lorenzo's attorney must refund to Pablo Lorenzo any and all fees and costs that he has already paid her in connection with this matter. She must also forgive any outstanding balance that Pablo Lorenzo owes her for work already performed. We direct Pablo Lorenzo's counsel to file, within 30 days from her receipt of the EAJA award from the government, an affidavit indicating the sum that has been refunded to Pablo Lorenzo. The affidavit should also indicate that she has discussed the award and the refund with Pablo Lorenzo himself.

## II. CONCLUSION

For all of the reasons set forth above, we GRANT Pablo Lorenzo's motion in part and award a total of $11,035.75 in attorney fees and costs. We DENY Pablo Lorenzo's motion to the extent that it seeks fees beyond this amount. In addition, we direct Pablo Lorenzo's counsel to file the affidavit discussed above within 30 days from the receipt of the EAJA award from the government.

KETHLEDGE, Circuit Judge, dissenting. Whether we can order the government to pay fees to a prevailing party under the Equal Access to Justice Act depends, as the majority recognizes, on whether the government's position in the litigation was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Our court therefore must not award fees as a matter of course whenever the government loses in litigation in which the Act applies. Yet that seems to be what the majority has done here: the majority says that the government "essentially repeats the arguments previously rejected by the majority of this panel"; the majority rejects those arguments for essentially the same reasons it rejected them before; and so the majority orders the payment of fees. But what our court should do is determine whether the government's position could satisfy a reasonable person, rather than whether that position could satisfy the judges who have already rejected it. In my view the government's position was plainly justified to that extent: indeed, for the reasons stated in my earlier dissent, I continue to think that the government's position was not only reasonable—but correct.

11